Correne ANDERSON, Appellee,

v.

The CITY OF COUNCIL BLUFFS, POT-TAWATTAMIE COUNTY, Iowa, Appellant.

Correne ANDERSON, Appellee,

v.

Richard SCOTT, Appellant.

No. 54732.

Supreme Court of Iowa.

Feb. 25, 1972.

374

Smith, Peterson, Beckman, Willson & Peterson, and Hugh Finerty, Council Bluffs, for appellants.

Peters, Walker, Campbell & Pearson, Council Bluffs, for appellee.

MOORE, Chief Justice.

On September 21, 1966, plaintiff while accompanying her critically injured son in a City of Council Bluffs ambulance sustained serious injuries as a result of being thrown about the interior thereof. When it proceeded through the crowned intersection of North 26th Street and Avenue D at a high rate of speed a "roller-coaster" effect resulted, causing the ambulance to bounce and swerve.

Plaintiff commenced two separate damage actions which were consolidated for trial. The first was against the city. As submitted to the jury the city's liability was based on plaintiff's allegations of negligence for failure to maintain the surface of the intersection in a reasonably safe condition. The second action was against city fireman, Richard Scott, for negligent driving. In answers to special interrogatories the jury found plaintiff was not a guest in the ambulance; the purpose of the trip was for some definite and tangible objective or purpose of defendants; Scott was negligent in failing to keep a proper lookout and the city was negligent in that it maintained or permitted to exist an unreasonable depression in the intersection of North 26th and Avenue D which the city knew or should have known would be hazardous to the public using the thoroughfare.

Defendants appeal from judgment on $26,000 verdict for plaintiff. We affirm.

Defendants argue their respective motions for directed verdict and post verdict motions based on insufficiency of evidence should have been sustained.

I. Defendants contend the evidence was insufficient as a matter of law to submit plaintiff's cause against Scott on alleged ordinary negligence.

Code section 321.494 provides: "Guest statute. The owner or operator of a motor vehicle shall not be liable for any damage to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of an alcoholic beverage, a narcotic, hypnotic or other drug, or any combination of such substances, or because of the reckless operation by him of such motor vehicle."

■ The purpose of our guest statute is to protect motor vehicle drivers and owners from claims made by persons who were riding in the motor vehicle as guests or by invitation and not for hire except as in the statute provided. It seeks to protect the Good Samaritan from claims based on negligence by those invited as a courtesy. Nielsen v. Kohlstedt, 254 Iowa 470, 473, 117 N.W.2d 900, 903, and citations.

■ However, one who rides in a motor vehicle for the definite and tangible benefit of the owner or operator is not a guest within the meaning of the guest statute and recovery for injuries suffered by such rider may be based on the negligence of the operator. And one who claims the guest statute is not applicable has the burden to prove his status was other than a guest. Wharff v. McBride, Iowa, 183 N.W.2d 700, 703, 704; Jackson v. Brown, Iowa, 164 N.W.2d 824, 826, 827, and citations.

What was plaintiff's status while riding in the ambulance rushing her son to the hospital? The record includes evidence the city owned the ambulance and regularly used city firemen to render emergency ambulance service for which the city made a fixed service charge. For transportation of a minor the parents were billed.

When plaintiff's minor son fell through a glass door neighbors called the ambu-

lance and on arrival at plaintiff's home the son was placed in the ambulance. There is evidence one of the firemen then said "someone has to go along" or "somebody is going to have to go along" or something to the effect it was necessary for someone to accompany the little boy. Plaintiff and a neighbor then got into the ambulance and on the way to the hospital both were injured as the ambulance passed through the intersection of North 26th Street and Avenue D at 40 to 50 miles per hour. Plaintiff's injuries included a broken hip.

The facts here are similar to those in Sheldon v. City of Burlingame, 146 Cal. App.2d 30, 303 P.2d 344, where plaintiff sustained personal injuries while riding in a police vehicle driven by a city policeman. When plaintiff finished his work at a restaurant he either asked to be driven or was offered a ride home by the policeman. While on the way an accident occurred and plaintiff was injured. The court held plaintiff was not a guest as a matter of law, provided the trier of fact found the officer was acting within the scope of his employment.

At pages 35, 36 of 146 Cal.App.2d, pages 347, 348 of 303 P.2d, the court states: *"If the driver is paid to transport a certain class of passengers, then each member of that class is thereby removed from the category of guest,* although actual payment of the fare is not made by the individual passenger. * * * If the trier of fact holds that the act of taking appellant home was a proper exercise of Ruhl's discretion as a police officer, then appellant thereby qualified as a member of a class which Ruhl was paid to transport as a part of his police duties. * * * When a public employee is driving a public vehicle and transporting a person in it in the performance of his official duties it is difficult to conceive of him as a 'host' or a rider as a 'guest' within the purpose and intent of the 'guest statute'." See also Carey v. City of Oakland, 44 Cal.App.2d 503, 112 P.2d 714 (plaintiff riding in city ambulance); Smith v. Fall River Joint Union High School Dist., 118

Cal.App. 673, 5 P.2d 930 (plaintiff riding in school bus driven by a paid driver); Mc-Guire v. Armstrong, 268 Mich. 152, 255 N.W. 745 (plaintiff riding with county nurse); Elliott v. Behner, 146 Kan. 827, 73 P.2d 1116 (plaintiff riding in county truck).

■ It is undisputed defendant Scott was a public employee engaged in the performance of his official duties at the time of the accident. The jury could and apparently did find Scott in the performance of his duty as an ambulance driver acted for the definite and tangible benefit of the public and for his own benefit in the form of wages. We hold there was sufficient evidence to allow submission of the question of plaintiff's status to the jury as well as all other essential elements of plaintiff's case against defendant Scott. Under the facts the trial court might well have held as a matter of law plaintiff was not a guest in the ambulance.

II. Defendant city argues the evidence was insufficient as a matter of law to show the city negligent in permitting to exist an unreasonable depression in the intersection of North 26th Street and Avenue D. We do not agree.

First it must be noted the accident here involved occurred prior to the effective date (January 1, 1968) of chapter 405, Acts of the 62nd General Assembly, now Code chapter 613A, which abrogates city governmental immunity. To avoid any claim of governmental immunity plaintiff based her claim on a breach of defendant city's duty to exercise reasonable care to keep its streets in reasonably safe condition under Code section 389.12. It provides: "Duty to supervise. They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

■ This specific statutory provision supersedes any theory of governmental im-

munity. Walker v. City of Cedar Rapids, 251 Iowa 1032, 1038, 103 N.W.2d 727, 731.

Dale J. Mills, city engineer, testified the customary design for a crown in such an intersection as involved here is three inches but this crown was in excess of five inches. He stated it would be hazardous to traverse the intersection at 25 to 30 miles per hour. Other testimony showed the lower areas had deteriorated and settled. Margaret Smith who lived on the northeast corner of the intersection testified the "bump" had existed for several years and she had complained to the city because of the noise resulting from numerous vehicles hitting it.

■ The record discloses substantial evidence to warrant submission to the jury the question of defendant city's negligence and the other essential elements of plaintiff's case against defendant city.

III. Defendants argued several grounds for new trial in the lower court and assert their denial is reversible error.

On voir dire examination plaintiff's counsel asked: "Are you or any member of your family employees or stockholders or officers or directors of the Western Insurance Company of Fort Scott, Kansas?" Defendants made timely motion for mistrial asserting the mention of a specific insurance company goes one step beyond the accepted general question in regard to any interest in or connection with an insurance company.

■ Litigants have the right to examine prospective jurors on voir dire in order to enable them to select a jury composed of persons qualified and competent to judge and determine the facts in issue without bias, prejudice or partiality. The extent of such examination cannot be governed by fixed rules, but is subject to the sound discretion of the trial court, the exercise of which we will not interfere with unless abuse is shown. Elkin v. Johnson, 260

Iowa 46, 49, 50, 148 N.W.2d 442, 444, and citations.

We have repeatedly approved proper inquiry of prospective jurors regarding interest in or connection with insurance companies. Lamaak v. Brown, 259 Iowa 1324, 1328, 147 N.W.2d 915, 917, and citations. In Montanick v. McMillin, 225 Iowa 442, 450, 280 N.W. 608, 613, where reference was made to a particular insurance company we quote the following from Raines v. Wilson, 213 Iowa 1251, 1262, 239 N.W. 36, 40: " 'The question which we are now considering has been passed upon by numerous courts, including our own. The overwhelming majority of the courts sustain the right of counsel for the plaintiff, in a personal injury case, so long as he acts in good faith for the purpose of obtaining information upon which to exercise his peremptory challenges *of the jurors* and not for the purpose of informing the jury that an insurance company is back of the defendant of record, to interrogate prospective jurors by one form or another of questions, with respect to their interest in, or connection with, insurance companies. See 56 A.L.R., pages 1456, 1457, 1458. Twenty-seven of our sister states have passed upon the question and sustained the plaintiff's right to propound an inquiry such as was the one propounded in the instant case. See Note in 56 A.L.R., pages 1456–1458, and cases there cited. It is clearly apparent that, if a litigant were denied the right to propound the question asked the jurors in the instant case, he might be compelled to accept a juror who is a stockholder in an insurance company, and probably the very one having defendant's liability insured.' "

■ Nothing in this record shows want of good faith on the part of plaintiff's counsel. He was not guilty of any persistent course or effort to impress upon the jury that defendants' liability was insured. We must note jurors are aware most people carry liability insurance and that fact is not to influence their verdict. We find no abuse of the trial court's discretion.

■ IV. The next matter argued by defendants concerns another voir dire question by plaintiff's counsel. After examining the prospective jurors he asked this general question: "Now, is there anybody on the panel who is going to have a hardship of some kind, a personal hardship, if they are selected to serve as a juror in this case?" One prospective juror answered he could not afford the financial loss and was excused by the court with defense counsel's consent.

Defendants assert the question of hardships must be left to the court lest it may appear counsel is attempting to curry favor with the jury. We do not agree. It relates to a juror's competency. We find no abuse of the trial court's discretion in permitting the question propounded by plaintiff's counsel.

■ V. Defendants claim also the trial court erred in permitting plaintiff to reopen her case at the close of all evidence. As part of plaintiff's case in chief the trial court admitted into evidence a copy of the city ordinance establishing the ambulance service and fixing the charge for that service. At the close of the evidence that ruling was changed and the trial court announced the jury would not be allowed to see and consider it. Thereafter plaintiff's motion to reopen was sustained and plaintiff related admissions against interest made by defendant Scott where he stated parents were charged for ambulance service furnished minors.

Rule 192, Rules of Civil Procedure, provides: "Further testimony for mistake. At any time before final submission, the court may allow any party to offer further testimony to correct an evident oversight or mistake, imposing such terms as it deems just."

We have said many times the trial court enjoys a wide discretion in reopening a case for the reception of additional testimony. In re Estate of Allen, 251 Iowa 177, 184, 185, 100 N.W.2d 10, 14, and citations. We are not prepared to say, under this record, the trial court abused that discretion.

VI. Defendants' other contentions have been considered and need not be stated in detail. We find them without merit.

The judgment of the trial court is affirmed.


MASON, BECKER, LeGRAND, REES and REYNOLDSON, JJ., concur.


UHLENHOPP and RAWLINGS, JJ., concur specially.


HARRIS, J., takes no part.


UHLENHOPP, Justice (specially concurring).

One case relied on is Sheldon v. City of Burlingame, 146 Cal.App.2d 30, 303 P.2d 344. In that case the police officer was not simply using a patrol car as a taxi. The Rules and Regulations of the City of Burlingame permitted an officer to transport someone when circumstances indicated that such course was proper courtesy and proper police procedure. Under the circumstances shown, the court held a fact question was presented as to whether proper courtesy and police procedure authorized the officer to transport the individual.

The Sheldon case is not authority for a general proposition that a police officer may lawfully transport people, and they are not "guests," under any and all circumstances.


RAWLINGS, J., joins in this special concurrence.